Shor et ux., Appellants, *v.* Employers' Liability Assurance Corporation.

Argued January 5, 1931. Before Frazer, C. J., Walling, Simpson, Kephart, Sadler, Schaffer and Maxey, JJ.

*Edwin Booth,* for appellants, cited: Sloat v. Ins. Co., 49 Pa. 14; Clarke v. Assurance Co., 146 Pa. 561.

*Horace Michener Schell,* for appellee, cited: Moore v. Ins. Co., 45 Pa. Superior Ct. 541; Heine v. Ins. Co., 49 Pa. Superior Ct. 501; White Co. v. Bowen, 84 Pa. Superior Ct. 484.

OPINION BY MR. JUSTICE SCHAFFER, January 21, 1931:

Appellant insurance company contests its liability to pay the value, $600, of a diamond alleged by plaintiffs to be covered by the residence theft policy, blanket form, issued by it to them, on the ground that the policy did not insure the stone, since it was covered by another policy issued by Lloyds of London. Appellants' contract specifically excepts articles "separately valued in or specifically insured under the policy of any other insurer." The trial judge directed a verdict in plaintiffs' favor. On appeal to the Superior Court, the judgment on the verdict was reversed and entered for defendant, from which action we allowed this appeal.

The policy in suit was issued on January 26, 1924, and covered jewelry, precious and semiprecious stones in the sum of $1,000. The effective date of the policy was February 27, 1924, and it was in force for one year. On the same date that the defendant's policy became operative, plaintiffs renewed a policy with Lloyds for a period of one year, under which there was separately valued and specifically insured among other articles "1 diamond solitaire about 2.50 [carats] 1,000."

On June 17, 1924, plaintiffs purchased the diamond in question for $600. There can be no question but that as a loose stone it was covered by defendant's policy. Shortly after its purchase, they had it set in the ring with the "diamond solitaire" specifically insured under the

Lloyds policy, and between September 29th and October 1, 1924, the ring containing the two stones was stolen from plaintiffs' residence.

Did the plaintiffs lose the benefit of defendant's insurance on the loose diamond by setting it in the ring with the solitaire covered by the Lloyds policy because of the provision in defendant's contract that "The insurance hereunder shall not cover articles separately valued in or specifically insured under the policy of any other insurer?" We are of opinion that they did not. Lloyds did not separately value or specifically insure the diamond here in question. They insured "1 diamond solitaire, about 2.50" and whether this be taken to mean the diamond itself or the diamond as set in the ring, can make no difference, all that was valued and specified as insured was one diamond, a "solitaire," not two diamonds, and the Lloyds policy, therefore, never covered the additional diamond, either before it was set in the ring or afterwards and hence defendant's claim to be exempt from liability as to it fails.

It is argued by appellant that because of the manner in which plaintiffs presented their claim they cannot recover; that in their pleadings and proofs of loss it was stated by them that claim was made for $600, the difference in the actual value of the ring taken and the amount of insurance on it carried by Lloyds. We think this of no consequence in view of the language of the policy and the actual facts. Defendant states its position to be that the ring of which the second diamond was a part was specifically insured and separately valued in the policy issued by Lloyds. This may have been true at the time the Lloyds policy was issued, but it is not the fact that they specifically insured and separately valued the ring with the two stones in it.

The cases of double insurance cited by defendant have no bearing on the pending case, it turns entirely on the language of the two policies. As we construe their relevant provisions, there was no double insurance. De-

fendant's policy covered precious stones without any restriction being imposed as to how or where they should be kept, other than that they should be within the residence of plaintiffs.

The judgment of the Superior Court is reversed and that of the common pleas reinstated and affirmed.